Aram K. Berberian *vs.* Board of Canvassers, City of Cranston.
Perry Shatkin *et al. vs.* Board of Canvassers and Registration of the City of Cranston.

MAY 24, 1960.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PER CURIAM. These two petitions for writs of certiorari were filed by certain qualified electors of the city of Cranston to review the action of the board of canvassers and registration in refusing to certify certain signatures appearing on a petition for the adoption of a charter for the city, filed pursuant to the provisions of article XXVIII of amendments to the state constitution, hereinafter referred to as amendment XXVIII. The writs were issued and pursuant

thereto the pertinent records have been certified to this court. The basic issues in each case are similar. Therefore the actions were consolidated for hearing and for this reason we shall treat the petitions together.

The principal question for determination involves the scope and extent of the power of canvassing authorities under amendment XXVIII to establish rules and regulations to guide them in carrying out the provisions of sec. 6 of this amendment with respect to their duty to determine the sufficiency of petitions filed thereunder.

The pertinent provisions of sec. 6 read as follows:

"Charter commissions.—Every city and town shall have the power to adopt a charter in the following manner: Whenever a petition for the adoption of a charter signed by fifteen per cent of the qualified electors of a city * * * shall be filed with the legislative body of any city * * * the same shall be referred forthwith to the canvassing authority which shall within ten days after its receipt determine the sufficiency thereof and certify the results to the legislative body of said city * * *."

On November 23, 1959 a petition for the adoption of a charter was filed with the city council. It contained over 11,000 signatures of persons who purported to be qualified electors. In compliance with the provisions of sec. 6 the city council on November 24, 1959 referred the petition to the board of canvassers and registration. Thereafter on November 27, 1959 the board held a meeting at which it adopted a resolution establishing certain rules to be used as a standard in determining the sufficiency of the petition and any similar petitions referred to it in the future.

Such rules provided in substance that the board would not certify any signatures unless they were affixed to the petitions within two years prior to the date upon which such petitions were filed with the city council. The resolution also provided that the sponsors of the petition before the board be given an opportunity to present evidence

as to the dates when the signatures were affixed and as to the person or persons who obtained signatures on certain pages of the petition which did not contain the name or names of attesting witnesses.

Copies of the resolution were given to the sponsors of the petition and they were notified that a hearing would be held on December 1, 1959 for the purposes set forth therein. At the hearing the sponsors declined to give any information relative to the dates on which the signatures were affixed or with reference to the person or persons who obtained the same or whether such signatures were affixed in the presence of the person who obtained them. There is no evidence in the record pointing to an express objection to any specific signature on the ground of illegality. The refusal of the sponsors to give the evidence requested by the board was based solely on the ground that in the circumstances the board had no authority under amendment XXVIII to require such information.

Thereafter on December 4, 1959 the board certified to the city council that the petition before them contained 4,309 valid signatures; that 4,990 valid signatures were required under the amendment; and that therefore the petition did not contain a sufficient number of such signatures to authorize an election on the proposition: "Shall a commission be appointed to frame a charter?" It based its decision on the ruling that it would not certify any signatures unless they were affixed to the petition within two years prior to November 23, 1959, and also upon its ruling that it was entitled to a certification as to the dates when the signatures were affixed and the person or persons who obtained them.

Accordingly in reaching such decision the board counted only the signatures which indicated that they had been affixed to the petition in the presence of attesting witnesses within two years prior to the filing thereof and the signature of petitioner Perry Shatkin, who appeared before the

board. Although he had signed the petition in 1955 the board ruled that by his appearance he signified an intention that his signature be counted and therefore it would be counted as a valid signature. The board rejected all other signatures which had not been affixed in the presence of attesting witnesses within two years of the filing of the petition.

Although, as we have already indicated, the petition originally contained over 11,000 signatures, we are not concerned in this proceeding with those signatures which the board apparently rejected for other reasons. We are now considering only the question of the legality of the board's action in refusing to certify certain signatures because they were not affixed to the petition within the two-year period prescribed by the board in the presence of attesting witnesses, and also because the individual sheets upon which such signatures appeared did not contain a certification by the person or persons who obtained them that the signatures were affixed in their presence. The question whether the signatures were otherwise invalid is not before us at this time. The narrow issue is whether the board exceeded its authority in promulgating the rules adopted by it and in applying such rules in the instant case.

On the basis of the record before us it appears that if the board's rejection of the signatures in question was unlawful, the petition would contain the requisite number of signatures necessary for the submission of the proposition to the voters of the city. In the posture in which the record has been presented for our consideration, it is clear that in passing on the validity of the signatures which it had checked from the petition as originally filed, the board certified only those signatures which complied with the rules adopted by it. The only difference between the signatures certified and those rejected was the failure of the latter group to comply with such rules. The board had apparently checked all the signatures in both groups with

the voting lists or office record and found that such signatures corresponded with the names as they appeared on the lists or office record. But in deciding whether such signatures were those of qualified electors within the meaning of amendment XXVIII, sec. 6, the board applied as a standard the rules adopted by it.

The question presented for our determination is one of first impression. It involves the basic law of our state and is of great importance to all the people. Primarily it depends upon the intendment of the representatives of the people who framed the amendment. The pertinent language in sec. 6 is clear and unambiguous. There is nothing therein which expressly or otherwise empowers the canvassing authority of any municipality, or for that matter any other department of government, to limit the time within which the signature of a qualified elector remains valid, or to require an attesting witness or a certification by the person or persons obtaining such signatures that they were affixed in his or their presence. In the absence of any restrictive language in the amendment, it is reasonable to assume that the people through their duly chosen representatives intended that the mere filing of a petition with a local legislative body would be prima facie evidence that the signatures contained therein, if otherwise valid, were those of qualified electors within the meaning of sec. 6 of amendment XXVIII and sec. 1 of article of amendment XXIX.

The board's requirements of an attesting witness or a certification and its imposition of a time limitation on the validity of a signature clearly restrict substantive rights granted to qualified electors under the amendment. In the absence of an express delegation of authority the board is without power to impose such restrictions. See *Madison* v. *Director of Dept. of Employment Security*, 90 R. I. 360, 158 A.2d 154.

Amendment XXVIII, which is self executing, contains no provision prescribing the procedure to be followed by

the canvassing authority in determining the sufficiency of the petition. In such circumstances the board of canvassers and registration may adopt reasonable rules of procedure to guide it and the public in giving effect to the mandate of the amendment. However, the board cannot adopt rules which restrict or enlarge substantive rights granted by the amendment.

We have carefully considered the board's contention that persons signing such petitions must be qualified electors both when they affix their signatures and also when such petitions are filed with the legislative body. This argument finds no support in the language of the amendment. The petitions acquire no legal status until they are filed. Prior thereto they are in the control of the person or persons obtaining the signatures. The amendment expressly refers to the filing of such petitions, but it does not specify at what time the validity of the signatures is to be determined. In our opinion the true test under amendment XXVIII is whether the person signing the petition is a qualified elector within the requirements of article of amendment XXIX, sec. 1, on the date of the filing of the petition with the local legislative body.

We now come to the board's contention that, unless it is determined it has the power to adopt the rules established by it in the instant case, the amendment should be declared inoperative because it is physically impossible to carry out its mandate within the time limit prescribed therein. We have considered such contention and do not question the sincerity of the board in discussing the practical difficulties confronting it in carrying out its duties within the requirements of the amendment. There is nothing in the record indicating bad faith or unwillingness on the part of the board to perform its duties. In fact the record shows clearly that the board acted in good faith and with fairness throughout the proceedings.

However, in so far as the case at bar is concerned, we do

not agree with the claim that the amendment is unworkable. The very fact that the board certified 4,309 signatures within the time limitation prescribed therein is proof that it was workable in this instance. In the absence of any evidence of illegality and in the absence of objectors, the canvassing authority is only required under the amendment to compare the signatures on the petition with the names on the voting lists or "office record" of the local board; to determine whether the signatures correspond with the names on such lists or record as being those of persons who appear thereon as qualified electors on the date of the filing of the petition with the local legislative body; and finally to determine whether the petition contains the requisite number of such signatures.

However, implicit in the amendment is the right and duty of interested citizens to aid the canvassing authority in maintaining the purity of the elective process by interposing objections to questionable signatures. In such circumstances the burden is on the objector to overcome the presumption created by the filing of the petition with the local legislative body, and the authority of determining the validity of the questioned signatures remains with the board. Under amendment XXVIII as drafted and as adopted by the people, there is no duty upon those who obtain signatures to prove the date on which such signatures were affixed or to certify that they were affixed in their presence. Nor is there any duty thereunder upon the signatories themselves to indicate or prove the date of signing or to sign in the presence of attesting witnesses.

After careful consideration we are of the opinion that the amendment has proved to be workable in this instance and that it was physically possible for the board of canvassers and registration to perform its duties thereunder. In the absence of evidence that the signatures in question were other than those of qualified electors within the meaning of article of amendment XXIX, sec. 1, and absent evi-

dence of any other irregularities, it is our opinion that the board exceeded its authority in refusing to certify the signatures in question for the reasons upon which it relied.

The petition in each case is granted. The record of the board's action in requiring certification of the dates on which signatures were affixed and the attesting witnesses to such signatures, and in deciding that there was an insufficient number of valid signatures, is quashed. The record as thus quashed will leave the petition for the adoption of a charter pending for action by the board in accordance with this opinion within ten days from the filing thereof, pursuant to the intent of the home rule amendment.

*Pontarelli & Berberian, Aram K. Berberian,* for petitioner Aram K. Berberian.

*Aram A. Arabian, John D. Archetto, Perry Shatkin,* for other petitioners.

*Frank W. Golemba,* City Solicitor, *James DiPrete, Jr.,* Assistant City Solicitor, for respondent.